PEOPLE v CASSELL

1. CRIMINAL LAW—WITNESSES—CREDIBILITY—PROSECUTOR'S DUTY—
   APPEAL AND ERROR.

   The trier of the facts is entitled to full information on matters
   pertaining to the credibility of witnesses; therefore a prosecutor
   was under a duty to reveal that a defense witness was lying on
   the witness stand where he knew this to be a fact, and the
   prosecutor's failure to do so constituted reversible error.

2. WITNESSES—CRIMINAL LAW—ERRONEOUS TESTIMONY—PROSECU-
   TOR'S DUTY—NEW TRIAL—APPEAL AND ERROR.

   Substantial error was committed when a prosecutor failed to
   bring to the attention of the judge or the jury the fact that a
   defense witness was lying on the witness stand, and a new trial
   is required where the defendant was convicted because the
   Court of Appeals cannot speculate whether or not the jury gave
   consideration to the erroneous testimony in reaching its ver-
   dict.

Appeal from Berrien, Julian E. Hughes, J. Sub-
mitted May 15, 1975, at Grand Rapids. (Docket No.
20455.) Decided August 12, 1975.

Adell V. Cassell was convicted of unlawful deliv-
ery of heroin. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *John A. Smietanka,*
Prosecuting Attorney, and *John Jeffrey Long,* As-
sistant Prosecuting Attorney, for the people.

*Lee Boothby,* for defendant.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 75 Am Jur 2d, Trial §§ 113–115.

Before: D. E. Holbrook, P. J., and Allen and
D. E. Holbrook, Jr., JJ.

D. E. Holbrook, P. J. On May 10, 1973, defend-
ant was convicted by a jury in the Circuit Court
for Berrien County, Michigan, of unlawful delivery
of heroin, contrary to MCLA 335.341(1)(a); MSA
18.1070(41)(1)(a). He received a sentence of 10 to 20
years in the State Prison of Southern Michigan.

Defendant, on appeal, raises one meritorious
issue. Since we do not believe that the other
allegations of error are likely to occur on retrial,
they are not dealt with herein.

During the course of the trial, defendant had
occasion to call one Dallas Martin Taylor as a
witness. As Mr. Taylor was a defense witness, the
defense had certain expectations as to the general
direction in which Mr. Taylor's testimony would
go. These expectations, it developed, were grossly
misplaced in many respects; but the one respect
that is material to this appeal is evidenced by the
following quote taken from the direct examination
of Mr. Taylor by defense counsel:

"*Q.* Have you been employed by the Berrien County
Metro Squad in any capacity?
"*A.* No.

\* \* \*

"*Q.* Did you tell me this morning that you had been
employed by the metro narcotic's detail of Berrien
County?
"*A.* I did.
"*Q.* Are you so employed?
"*A.* No, I'm not."

The witness maintained that he had lied to
defense counsel at an earlier interview wherein he
had stated, among other things, that he had been

an agent of the Berrien County Metro Squad. The witness also maintained that he was telling the truth on the witness stand when he said that he had never been an agent of the Metro Squad. The witness went on to give testimony which was very prejudicial to the defendant.

The witness, Mr. Taylor, had in fact been an employee of the Narcotics Unit. In addition, it was later stipulated by the parties that the officer in charge of the investigation which led to the arrest of this defendant had knowledge of the fact that Mr. Taylor had been an agent of the Metro Squad. This officer was present during the testimony of Mr. Taylor wherein he denied any involvement with the Metro Squad. In fact, that officer was seated at the prosecution's table in the courtroom.

The prosecution made no effort to bring to the attention of the judge or the jury the fact that the witness was again lying, this time from the witness stand, when he denied being an agent of the Metro Narcotics Unit. As a matter of fact, in his closing argument the prosecutor treated the testimony of Mr. Taylor as if it were completely true, and urged the jury to believe it.

As this Court said in *People v Nettles,* 41 Mich App 215, 219–220; 199 NW2d 845, 847 (1972):

"Yet, under our law the 'trier of the facts' is entitled to full information on matters pertaining to the credibility of witnesses, and in fact it is always argued by the prosecution and instructed by the court that the jury must consider the 'bias or prejudice or interest in the outcome of the proceeding' on the part of the witnesses in determining their credibility. This fact is so well known, and because it is equally well known that the prosecutor has the obligation to protect the interests of all citizens, not merely to secure convictions, we see no need to extend the length of this opinion by citation of numerous authorities."

Certainly, the prosecution must be imputed with

knowledge of facts which are known to its chief investigative officer. But even were this not so, our decision in *People v Anderson,* 44 Mich App 222; 205 NW2d 81 (1972), would compel reversal. In *Anderson* the prosecutor innocently relied upon a fact which turned out to be completely false. He stressed the fact to the jury in his closing argument as did the prosecutor here. As we said in *Anderson* at 44 Mich App p 229; 205 NW2d p 85:

"We are constrained to rule that even though the testimony of Mr. Rogers may have been obtained by the prosecutor innocently, and given by Mr. Rogers in good faith, it was not true, and in fact was used improperly to discredit defendant and obtain his conviction."

On the strength of *Anderson,* therefore, we would feel compelled to reverse this defendant's conviction even were the prosecution totally unaware of the falsehood.

The fact that the jury was already aware that the witness had lied to defense counsel in an earlier interview is not important. The jury had a right to know that the witness was lying on the witness stand. The fact that the witness had not been called by the prosecution was likewise of no importance. The prosecution's duty to prevent lies from entering the evidence in the guise of truth stems not from any particular role in the adversary process; rather, it is derived from the prosecution's duty to represent the public interest, and to place the pursuit of truth and justice above the pursuit of conviction.

We cannot speculate in light of this substantial error whether or not the jury gave consideration to the erroneous testimony in reaching its verdict. A new trial is required. See *People v Anderson, supra,* at 44 Mich App pp 228–229; 205 NW2d pp 84–85.

Reversed.